**[Cite as *State v. Donaldson*, 2026-Ohio-477.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                                  Court of Appeals No.  {48}L-24-1246

    Appellee                                                Trial Court No.  CR0202302666

v.

Christopher Donaldson                             **DECISION AND JUDGMENT**

    Appellant                                              Decided: February 13, 2026

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and,
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Catherine Meehan, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal of a September 27, 2024 judgment of the Lucas County

Court of Common Pleas, finding appellant guilty, following a jury trial, on one count of

endangering children, in violation of R.C. 2919.22(A), a felony of the third degree, and

sentencing appellant to a 12-month term of incarceration.  For the reasons set forth below,

this court affirms the judgment of the trial court.

**{¶ 2}** Appellant, Christopher Donaldson, sets forth the following four assignments of error:

> I: The trial court erred in denying appellant's motion to dismiss as untimely.
> II: The trial court erred in permitting expert testimony when the State of Ohio failed to comply with Crim.R. 16(K) and no good cause was shown to modify the time requirements, causing prejudice to appellant.
> III: Appellant's conviction was not supported by sufficient evidence.
> IV: Appellant's conviction was against the manifest weight of the evidence.

*Case Background*

**{¶ 3}** The following facts are derived from the record of evidence presented to the trial court. This case arises from an incident that occurred on October 17, 2023, during which appellant, while serving as the sole caregiver of C.D., his four-month-old infant son and the victim in this case, forcefully handled C.D. in such a way that he fractured C.D.'s right humerus. Appellant does not deny the occurrence, but rather, denies bearing legal culpability in connection to same.

**{¶ 4}** On October 17, 2023, A.K., C.D.'s mother, left C.D. in appellant's care upon leaving for work as a Door Dash delivery driver. Shortly after leaving home, A.K. stopped at a service station to purchase gas and supplies for work. While getting gas, A.K. received a frantic mobile phone call from appellant. Appellant told A.K. that upon picking up C.D., while he was fussing, appellant heard something "pop" in C.D., and C.D. needed to be taken to the emergency room.

2.

{¶ 5} A.K. immediately returned home, observed C.D.'s right arm dangling in an unusual way, and determined that C.D. was injured. A.K. took C.D. to the emergency room for medical treatment, while appellant remained at home.

{¶ 6} Upon evaluating C.D. at the hospital, medical personnel tested C.D.'s right arm to first determine if C.D. may possibly suffer from a condition referred to as "nursemaid's elbow" which, if present, may have been a benign cause of C.D.'s injury. Upon testing C.D., it was determined that C.D. did not have "nursemaid's elbow" and it was ruled out as the cause of the injury. Upon concluding examination and treatment of C.D., emergency medical personnel ultimately determined that the origin of C.D.'s injury was not benign. Accordingly, the Toledo Police Department was notified of the incident and commenced an investigation into the cause of the infant's injury.

{¶ 7} Detective Gawrych ("Gawrych") was assigned to investigate the case. When interviewing appellant, appellant acknowledged to Gawrych that C.D. had been quite fussy, so appellant grabbed C.D. by the hands, lifted him up, heard a "pop", and then noted that C.D.'s level of fussiness worsened. The police investigation ultimately concluded that appellant fractured C.D.'s right elbow when forcefully handling him.

*Procedural History*

{¶ 8} On October 26, 2023, appellant was indicted on one count of endangering children, in violation of R.C. 2919.22(A), a felony of the third degree. Appellant retained counsel and pled not guilty. On November 2, 2023, appellant requested a bill of particulars. On November 21, 2023, the State responded to appellant's bill of particulars,

3.

detailing that the offense occurred on October 17, 2023, between 6:15p.m. and 6:30p.m., directed appellant to the police reports prepared in the course of the investigation into the incident, and offered appellant inspection of all non-protected file materials at a mutually agreed upon time. Appellant declined to arrange for an inspection of the file materials.

{¶ 9} On February 21, 2024, in accord with Crim.R. 16, the State provided appellant's counsel with the expert report prepared by Dr. Randall Schlievert ("Schlievert"), its' expert witness. The report determined, in relevant part, "Overall, the right elbow fracture is concerning for likely non-accidental trauma."

{¶ 10} The week prior to trial, Schlievert learned that there was video footage of appellant demonstrating to Gawrych how appellant purported to have been handling C.D. just prior to the injury occurring. As a cautionary step, to determine whether the video footage may modify his above-quoted initial conclusion regarding the cause of C.D.'s injury, Schlievert reviewed the footage. On August 8, 2024, after reviewing the footage, Schlievert prepared a one-page supplement to his initial report, determining that the video footage did not alter, but rather, reinforced his initial conclusion, finding, in relevant part,

> What [appellant] demonstrated [in the video re-enactment] doesn't put disproportionate force on the right or left elbow [such that the injury could not have occurred if appellant handled C.D. as he purported to have in the video re-enactment]. Hence, there was disproportionate force put on [C.D.'s] right elbow, which is not consistent with what [appellant] demonstrated and is only reasonably consistent with more extreme non-daily forces that were used [by appellant upon C.D.] that day.

4.

{¶ 11} On August 9, 2024, the one-page supplement to the initial report, consistently finding the injury was caused by non-accidental trauma inflicted by appellant, was provided to appellant's counsel.

{¶ 12} On August 13, 2024, the case was scheduled for jury trial. On the afternoon of August 12, 2024, the day prior to trial, appellant filed a motion to dismiss, premised upon generic allegations of a defective indictment, and also a motion in limine to exclude Schlievert's testimony regarding the supplement to the report based upon the undisputed lateness of the congruous one-page supplement.

*Motion to Dismiss and Motion in Limine Regarding Schlievert*

{¶ 13} On August 13, 2024, at the onset of the trial proceedings, the trial court first heard opposing arguments on the two above-described pending motions. The trial court first denied appellant's motion to dismiss as untimely, finding that appellant failed to demonstrate any defects in the indictment, as will be discussed in detail below, so as to arguably justify the lateness of the motion.

{¶ 14} With respect to the motion in limine, all parties acknowledged that the receipt of the one-page supplement to the initial report, with consistent causation findings, was not furnished to appellant 21 days prior to trial, as required by Crim.R. 16(K). Accordingly, to rectify the untimely discovery issue, the trial court offered appellant a continuance of the trial, and indicated that it would reschedule the trial in conformity with the Crim.R. 16(K) timing requirements.

5.

**{¶ 15}** Appellant refused the corrective continuance, requested that the case immediately proceed, and requested that Schlievert's testimony be excluded regarding the supplement. However, despite requesting the exclusion of Schlievert's testimony on the supplement, appellant conceded that Schlievert could be adequately cross-examined on the supplement, so as to prevent prejudice. Counsel acknowledged, "[Schlievert] says the [initial] report is not incorrect, but he asserts more strongly in the [supplement] that he believes that this was foul play rather than an accident. . .I'd be able to elicit or show that. . .on cross-examination." Upon consideration of the opposing positions, and given the concession that potential prejudice could be addressed via cross-examination, the motion in limine was denied.

**{¶ 16}** The case then proceeded to trial with the State presenting extensive testimony from three chief witnesses: A.K., Gawrych, and Schlievert. Appellant presented no witnesses, and the case was then submitted to the jury. Following jury deliberations, appellant was found guilty on the sole count of endangering children, in violation of R.C. 2919.22(A), a felony of the third degree. On September 27, 2024, appellant was sentenced to a 12-month term of incarceration. This appeal ensued.

*First Assignment: Motion to Dismiss, Crim.R. 12(C)(2) and (D)*

**{¶ 17}** In the first assignment of error, appellant argues that the trial court erred in denying appellant's untimely Crim.R. 12 motion to dismiss, filed the day before the jury trial. We are not convinced.

6.

{¶ 18} In support of the first assignment of error, appellant asserts, "The motion to dismiss set forth valid legal challenges to the language in the indictment . . .Ordinarily, all pretrial motions . . . Shall be made within 35 days of arraignment or seven days before trial, whichever is earlier [Crim.R. 12(D)]. . . However, Crim.R. 12(C)(2) provides an exception [for] defenses and objections based on defects in the indictment."

{¶ 19} However, appellant fails to articulate any element of the offense charged that was excluded from, or improperly articulated in, the language of the indictment. Likewise, upon our review, the record reflects none.

{¶ 20} R.C. 2919.22(A), (E)(2)(c), the child endangering statute, provides in relevant part, "No person, who is the parent. . . of a child under eighteen years of age. . . shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. . . If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, [the offense is] a felony of the third degree."

{¶ 21} The record shows, reflecting substantive equivalence to R.C. 29212.22(A), (E)(2)(c), that appellant's indictment set forth that on October 17, 2023, in Lucas County, Ohio, appellant, "[D]id recklessly create a substantial risk to the health or safety of a child, by violating a duty of care, protection, or support, and the violation resulted in serious physical harm to the child involved, in violation of §2919.22(A), (E)(1) and (E)(2)(c) of the Ohio Revised Code, endangering children, being a felony of the third degree."

7.

*Mathis and Waiver of Defective Indictment Claim*

{¶ 22} Crim.R. 12(D) establishes, "All pretrial motions except as provided in Crim.R. 7(E) and 16(M) shall be made within 35 days after arraignment or seven days before trial, whichever is earlier."

{¶ 23} As held by this court in *State v. Mathis*, 2022-Ohio-2291, ¶ 15 (6th Dist.), a case in which the appellant similarly filed an untimely motion to dismiss, likewise prefaced upon generic claims of a defective indictment, this court held,

> [Appellant's] motion to dismiss was problematic, given its timing and lack of evidentiary support. . .Pursuant to Crim.R. 12(C)(2) and (D), the time for [appellant] to challenge the indictment was within thirty-five days after arraignment or seven days before trial, whichever is earlier. Additionally, Crim.R. 12(F) required the trial court to rule on a motion to dismiss before trial. *While the rule permits a trial court to consider untimely motions, for good cause, [appellant] did not seek leave to challenge the indictment prior to his trial, and the failure to raise an objection or seek dismissal [of the indictment] prior to trial is deemed as a waiver under Crim.R. 12(H).* (Emphasis added).

{¶ 24} Similarly, in the instant case, appellant did not seek leave to challenge the allegedly defective indictment prior to trial. As such, the failure to object or seek dismissal on that basis prior to trial constituted waiver of same pursuant to Crim.R. 12(H).

{¶ 25} Thus, in accord with *Mathis*, appellant's untimely, unsupported claim of a defective indictment does not suffice to avoid the Crim.R. 12(C)(2) and (D) consequences of filing an untimely motion to dismiss. The motion to dismiss was

8.

properly denied as untimely. Appellant's first assignment of error is found not well-taken.

*Second Assignment: Crim.R. 16(K) and Schlievert's Testimony*

{¶ 26} In appellant's second assignment of error, appellant argues that the trial court erred in permitting Schlievert's expert testimony on the supplement given appellee's failure to comply with the timing requirements of Crim.R. 16(K) by furnishing Schlievert's one-page supplement to appellant on August 9, 2024, approximately four days prior to the jury trial.

{¶ 27} While appellee acknowledges that the supplement did not comport with the Crim.R. 16(K) timing requirements, and we likewise acknowledge same, we do not find that this constituted reversible error under the facts and circumstances of this case. Specifically, given (1) appellant's blanket rejection of the trial court's offer to correct the Crim.R. 16(K) issue by granting a continuance, (2) that the addendum's causation finding was congruous with the initial report, and (3) appellant's unqualified acknowledgement to the trial court that risk of prejudice from the untimely supplement could be addressed through cross-examination of Schlievert, appellant failed to establish prejudice from the untimely Crim.R. 16(K) disclosure.

{¶ 28} Crim.R. 16(K) establishes,

> An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion and shall include a written summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than 21 days prior to trial, which may be modified

9.

by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

{¶ 29} Schlievert's initial report, timely submitted to appellant on February 21, 2024, concluded, in relevant part, that the cause of C.D.'s injury was, "[L]ikely non-accidental trauma. It may be worth [appellant] demonstrating on video how he pulled [the infant] up [immediately prior to the injury] using a doll."

{¶ 30} On August 8, 2024, Schlievert viewed the video, and determined that the contents aligned with his findings set forth in the initial report. On August 9, 2024, a one-page supplement to Schlievert's initial report was provided to appellant. In the supplement, Schlievert determined, in relevant part,

> Father now facing trial next week. Prosecutor advised there is [an] interview on video that contains father outlining what happened [prior to the injury]. . .Father reports child fussy, on dad's bed. Dad lifts by both hands [and immediately] hears pop/crack [from infant's body] and [the victim] fusses more. . . *In light of what has been reviewed, the reviewed material [appellant's video re-enactment] does not change my prior opinion . . .[T]here was disproportionate force put on the right elbow [fracturing it], which is not consistent with what [appellant] demonstrated and is only reasonably consistent with more extreme [non-accidental]. . . forces that [appellant] used [upon C.D.] that day*. (Emphasis added).

{¶ 31} In acknowledging the untimeliness of the supplemental report, and presenting the issue to the trial court for its consideration, appellee stated,

> So, as it relates to Dr. Schlievert, I believe that the [initial] report was timely. I know it was timely. . . What I leave for the court is whether to -- is how to handle the addendum that was authored late last week. If the defense needs a continuance to [further] review that [one-page] report, I think the court could grant that. . . The supplemental report does not change [Schlievert's] opinion.

10.

**{¶ 32}** In light of the above, the trial court offered to remedy the Crim.R. 16(K) issue regarding the supplemental report, stating to counsel for appellant, "Do you want me to continue the trial at your request to give you [more] time to respond to this [addendum to the initial] report?" Counsel for appellant declined the offer to remedy the discovery situation, replying, "Your honor, no, we are not asking for a continuance. . . I would ask that the remedy be that the secondary report is not included and that Dr. Schlievert is not permitted to testify as to the second report."

**{¶ 33}** The trial court responded, "The supplement is really, it's really only [one] page. . . Are you able to adequately cross-examine [Schlievert on the supplement]?" Counsel for appellant conceded, "Your Honor. . . I'd be able to elicit or show [any claimed] contradiction in cross-examination [to avoid prejudice]."

**{¶ 34}** Accordingly, based upon the foregoing exchange, the trial court held, "I'm ruling that I don't believe there's any prejudice from the expert witness testifying as to what is in the supplemental report. So the motion in limine is denied."

**{¶ 35}** Faced with an analogous untimely discovery issue, in which appellant was provided discovery on the day of trial, but declined a continuance to remedy the untimeliness and elected to proceed to trial as scheduled, the Second District held in *State v. Harrison*, 2020-Ohio-3817, ¶ 25 (2d Dist.), "*More importantly, [appellant] rejected the court's effort to remedy the violation, as a result, [appellant] waived any error.* E.g., *State v. Johnson*, 2018-Ohio-1389, 110 N.E.3d 800, ¶ 30 (8th Dist.). . .*If a continuance is*

11.

*offered but declined, the trial court may presume that the violation of discovery has been remedied; the defendant has also waived violation*." (Emphasis added).

{¶ 36} In accord with *Harrison*, we likewise find that because appellant rejected the court's offer to remedy the discovery timing violation via a continuance and elected to immediately proceed to trial, appellant waived the discovery violation for purposes of this appeal. Wherefore, we find appellant's second assignment of error not well-taken.

*Third Assignment: Sufficiency of the Evidence*

{¶ 37} In appellant's third assignment of error, appellant argues that his conviction on one count of endangering children, in violation of R.C. 2919.22(A), was not supported by sufficiency of the evidence. We do not concur.

{¶ 38} As held by this court in *State v. Costilla*, 2024-Ohio-3221, ¶ 44 (6th Dist.),

> The test for sufficiency is one of adequacy, or whether the evidence, if believed, can sustain the verdict as a matter of law. *Manning* at ¶ 12, citing *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 132. The sufficiency standard applies to the prosecution's burden of production at trial. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 26.

{¶ 39} In conjunction, as held by this court in *State v. Cavin*, 2025-Ohio-1578, ¶ 14 (6th Dist.),

> In reviewing a challenge to the sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the prosecution and determines whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id*., quoting *Messer* at ¶ 16, quoting *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). . . The question of whether the evidence is sufficient to support a conviction is a question of law. *Id*., citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

12.

{¶ 40} Lastly, R.C. 2919.22(A), (E)(1), and (E)(2)(c) establishes in relevant part, "No person, who is the parent. . . of a child under 18 years of age. . . shall create a substantial risk to the health or safety of the child by violating a duty of care, protection, or support   . . .If the violation. . . results in serious physical harm to the child involved [the offense is] a felony of the third degree."

{¶ 41} At trial, the State first presented the testimony of A.K., C.D.'s mother. A.K. testified that on October 17, 2024, "[Appellant] comes home, we exchange hellos like we normally would, and then I say I'm going to go [work for] DoorDash. . . I said goodbye to the kids and [appellant], and I left."  A.K. next testified that, approximately five minutes after leaving C.D. in appellant's care, appellant called A.K. on her cell phone and, "[Appellant] told me that he picked up our son and he heard a pop, and we should take him to the ER."

{¶ 42} Upon quickly returning home and examining her infant son, A.K. testified, "When I got home, I ran upstairs to check on him. . . I very carefully looked at [C.D.'s] arm. . .It was dangling. . . It did look like something was wrong. . .It just looked limp. . .like something was wrong."  A.K. then testified that she proceeded to take C.D. to the emergency room where x-rays revealed a fracture of the right elbow.

{¶ 43} Detective Gawrych ("Gawrych") of the Toledo Police Department next testified.  Gawrych first testified regarding his education, training, experience, and his assignment to the crimes against persons division of TPD.  Gawrych further testified that

upon Toledo Hospital contacting TPD with suspicions of the circumstances of the injury in this case, he was assigned to investigate.

{¶ 44} Gawrych testified that he subsequently spoke to the treating medical personnel from Toledo Hospital, A.K., and appellant. Gawrych testified that appellant, "[S]aid that the baby had been lying on a bed. It began to fuss, so he went to pick up the baby to move him and he grabbed him by the hands. . .He said that he heard a pop or crack like noise when he lifted the child up. . . He said that the child continued to fuss." Upon direct inquiry, "Did [appellant] express to you that he knew that he had broken his son's arm?", Gawrych replied, "Yes, he did."

{¶ 45} Dr. Randall Schlievert next testified. Schlievert first testified in detail regarding his considerable education and experience in child abuse and neglect cases. Schlievert then testified that he reviewed 1,121 pages of medical records and documentation in this case to ascertain what caused C.D.'s injury. Schlievert explained,

> Exhibit 4 is the actual report or result of the x-rays that were done. . . *About 20 x-rays of the body of the child, and in the end they identified what was called a classic metaphyseal. . . [a] fracture on the distal right humerus near the elbow. . . There would have to be something outside of the normal handling of an infant [to exert the force necessary to cause the fracture]. . .* If they were normal forces that could cause these fractures they would happen routinely. . . I don't see these kinds of fractures routinely. I see a few a year. *So this is the type of fracture we see when the arm is jerked forcefully. . .I felt this was concerning for physical abuse or nonaccidental injury.* (Emphasis added).

{¶ 46} In subsequently testifying if viewing the videotape of appellant's re-enactment of what purportedly occurred changed his initial determination of physical abuse or nonaccidental injury, Schlievert testified,

> *It just solidified it. What I saw in [appellant's video] demonstration did not contain the mechanism or use of his arms or his hands related to [appellant's handling of C.D.] to cause an isolated fracture of [C.D.'s] one elbow. . .*[Appellant said] I do this all the time. So if that's done all the time [by appellant to the victim] then there should be repeated injuries. . .*The only reasonable answer in the end is a nonaccidental trauma or physical abuse event [by appellant upon C.D.] for the right arm [fracture to occur].* (Emphasis added).

{¶ 47} Appellee rested, appellant presented no witnesses, and the case was submitted to the jury. Appellant was found guilty.

{¶ 48} Upon our scrutiny of the record, paying particular attention to the transcripts of the jury trial proceedings, we find that the record contains unrefuted evidence that on October 17, 2023, appellant's 4-month old son, C.D., was left in appellant's sole care when A.K., C.D.'s mother left for work. A.K.'s undisputed testimony reflects that several minutes after leaving home, appellant frantically called her, indicated that he had physically handled C.D. upon C.D. fussing in such a way that he heard a pop or crack and emergency medical treatment was needed. A.K.'s undisputed testimony further reflects that she immediately returned home, immediately discerned that something was wrong with C.D.'s dangling right arm, took him to Toledo Hospital, x-rays were taken, and showed that C.D. had sustained a fracture of the humerus near the right elbow.

15.

**{¶ 49}** Gawrych's undisputed testimony reflects that appellant acknowledged that he immediately knew something had occurred to C.D. upon his handling of his fussing infant son, and acknowledged that he had physically injured his son, causing the bone fracture to occur. Lastly, Schlievert's undisputed expert testimony definitively concluded that the causation of the infant's bone fracture was, "a nonaccidental trauma or physical abuse event for the right arm [caused by appellant during his handling of C.D. while providing care to C.D.]."

**{¶ 50}** We find that the record contains unrefuted evidence reflecting that on October 17, 2023, appellant, father of the then four-month-old C.D., created a substantial risk to the health and safety of the C.D. by forcefully picking up C.D. when he was fussing, in violation of a duty of care, protection, or support, in such a forceful manner that resulted in serious physical harm to C.D., causing a metaphyseal fracture on C.D.'s distal right humerus near the elbow, constituting an offense of child endangering, in violation of R.C. 2919.22.

**{¶ 51}** Thus, when viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt, and that the evidence was sufficient to support the conviction as a matter of law. Appellee satisfied the burden of production at trial. Wherefore, we find appellant's third assignment of error not well-taken.

16.

*Fourth Assignment: Manifest Weight of the Evidence*

{¶ 52} In appellant's fourth assignment of error appellant similarly argues that the conviction was against the manifest weight of the evidence. We are not convinced.

{¶ 53} As held by this court in *State v. Costilla*, 2024-Ohio-3221, ¶ 45 (6th Dist.),

> The test of manifest weight of the evidence. . . applies to the prosecution's burden of persuasion. *Messenger* at ¶ 26. A challenge to a conviction based on manifest weight of the evidence questions whether the trial court could find a greater amount of credible evidence was admitted at trial to sustain that decision than not. *Manning* at ¶ 41, citing *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, citing *Thompkins* at 387, 678 N.E.2d 541. In reviewing a verdict against the manifest weight of the evidence, we give deference to the trial court's credibility determinations, and the testimony of a single witness, if believed, will support a conviction. *Manning* at ¶ 41-42, citing *Myers*, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 140-141.

{¶ 54} In support of the fourth assignment of error, appellant summarily claims, "The evidence here simply does not support that there was a substantial risk of harm to the child by lifting him up by his arms." The record reflects otherwise.

{¶ 55} As discussed above in detail in response to the third assignment of error, Schlievert definitively determined both that the injury sustained by the victim could not have occurred in the way in which appellant purported it to have occurred in the video re-enactment and, in conjunction, Schlievert definitively determined that the cause of C.D.'s metaphyseal fracture of the distal right humerus was caused by appellant's forceful physical handling of the fussing infant in such a way that the injury was the result of a, "nonaccidental trauma or physical abuse event for the right arm."

17.

{¶ 56} Accordingly, we find that a greater amount of credible evidence was admitted at trial to sustain the conviction than not. Thus, appellee satisfied the burden of persuasion. Wherefore, we find appellant's fourth assignment of error not well-taken.

{¶ 57} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.
_____
JUDGE

Christine E. Mayle, J.
_____
Myron C. Duhart, J.                                    JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.