[Cite as *State v. Nichter*, 2019-Ohio-279.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

    Plaintiff-Appellant,                     :

                                     No. 18AP-230
v.                                               :      (C.P.C. No. 10CR-7383)

Daniel J. Nichter,                               :      (REGULAR CALENDAR)

    Defendant-Appellee.                      :

---

D E C I S I O N

Rendered on January 29, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellant. **Argued:** *Steven L. Taylor*.

**On brief:** *Taft Stettinius & Hollister LLP*, *David H. Thomas*, and *Kathryn S. Wallrabenstein*, for appellee. **Argued:** *David H. Thomas*.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals from a decision of the Franklin County Court of Common Pleas granting the request of defendant-appellee, Daniel J. Nichter, for judicial release. For the reasons set forth below, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On December 20, 2010, appellant filed an indictment charging appellee with 1 count of engaging in a pattern of corrupt activity under R.C. 2923.32, 1 count of theft under R.C. 2913.02, 22 counts of identity fraud under R.C. 2913.49, 20 counts of forgery under R.C. 2913.31, and 4 counts of receiving stolen property under R.C. 2913.51. The indictment alleged that appellee had held himself out as several different licensed

residential real estate appraisers and forged appraisals in their names, resulting in a number of financial institutions making potentially under-secured mortgage loans valued over $1,000,000.

{¶ 3} Pursuant to a plea agreement, on November 18, 2011, appellee pleaded guilty to three counts of identity fraud, each a second-degree felony under R.C. 2913.49. The parties jointly recommended to the trial court sentences of four years on each count to run concurrently. On January 13, 2012, the trial court accepted appellee's plea of guilty to three counts of identity fraud and dismissed the remaining counts. At the sentencing hearing, two of appellee's victims, Durk Reese and Mark Harmon, told the trial court the following:

> MR. REESE: In November '09, I started my own appraisal business. * * *
>
> In March * * * of 2010, I received a compl[ai]nt from the Division of Real Estate that my license was under investigation for bad appraisers. I couldn't grow my business because I was under investigation. * * *
>
> In July of 2010, I found out through other clients of mine that I've been blackballed. That means I couldn't do work no where. * * * That cost me 50 percent of my clients[.] My livelihood, my ability to take care of my family was almost — you know, it was gone. * * *
>
> * * * I'd been blackballed because * * * all the expenses had gone to [appellee]. Not to me. He signed my name, but he put his own e-mail address, his own home number, his own fax on but with my name. So everything went to him. * * *
>
> * * * I can't get all the money I lost. * * * I know I lost thousands of dollars of hard money, potential income. It could be hundreds of thousands of dollars that I lost in the two years that it's taken to do this.

(Jan. 13, 2012 Tr. at 14-17.)

> MR. HARMON: I went to work for [appellee] in 2006 as his appraiser apprentice. * * *
>
> * * *
>
> In March 2009, I left his appraisal business for a better opportunity.

> In April of 2010, I was notified by City Mortgage that there was significant deficiencies in two reports that I had submitted[.] Because of their negative review, I had been placed on their internal do-not-use list. [T]he list that's shared with the general public. It's common knowledge throughout the appraisal industry[.] This prevented me from working[.]
>
> [I]t was discovered that the appraisal reports that had received the negative reviews were written by [appellee]. He signed them using my stolen signature.
>
> [I]n early 2010, * * * there was an abundance of work. * * * I was unable to participate in that work. * * *
>
> I've not only been damaged financially, but my reputation has been damaged throughout the industry, [a]nd to have this stigma associated with me makes it very difficult to get work from certain companies.

(Jan. 13, 2012 Tr. at 18-21.)

{¶ 4} The trial court sentenced appellee to four years of imprisonment on each count, all to be served concurrently, and ordered him to write letters of apology to the three professional real estate appraisers who were the victims of appellee's crimes and from whom appellee stole personal identifying information.

{¶ 5} After serving seven months, appellee filed a motion for judicial release on August 7, 2012. The trial court overruled the motion but indicated that it would reconsider the request after appellee had served one year of his sentence.

{¶ 6} Appellee filed another motion for judicial release on May 24, 2013. The trial court held a hearing on November 22, 2013 to consider the motion. Appellant urged the trial court to deny the motion based on the seriousness of the crime. On January 13, 2014, the trial court issued an order granting the motion for judicial release, suspending appellee's prison term and placing appellee on a three-year term of community control. Appellant appealed to this court as a matter of right.

{¶ 7} This court reversed, holding the trial court had failed to make the "very specific set of findings" required by R.C. 2929.20(J) and to "justify its findings with an analysis of the relevant R.C. 2929.12 factors." *State v. Nichter*, 10th Dist. No. 14AP-34, 2014-Ohio-4226, ¶ 13 ("*Nichter I*").

{¶ 8}    The trial court held a second hearing on November 14, 2014, at which time it merely read the statutory language into the record and granted appellee's request. Appellant appealed the decision of the trial court.

{¶ 9}    In a split decision, we reversed the trial court once again in *State v. Nichter*, 10th Dist. No. 15AP-40, 2015-Ohio-3489 ("*Nichter II*").  In *Nichter II*, we concluded that the trial court "read verbatim" the language of the statute and "acknowledged the required statutory findings" but "failed to actually make the findings required" by the statute.  *Id.* at ¶ 8, 9.

{¶ 10}  The trial court held a third hearing on September 10, 2015.  Appellant again asserted that granting judicial release would demean the seriousness of the offenses.  As a result of the hearing, the trial court again granted appellee's motion for judicial release.  At the September 10, 2015 hearing, the trial court also made the following comments on the record:

> The court anticipates that the state will appeal this matter.  As such, it will await a ruling from the appellate court on whether this recitation meets statutory requirements.
>
> Whatever the outcome of that appeal, the court wants to be clear that it has no intention of reversing its original decision to grant [appellee's] request for judicial release.

(Sept. 10, 2015 Tr. at 24.)

{¶ 11}  Appellant appealed to this court from the decision of the trial court.  In a split decision, we reversed the trial court for a third time in *State v. Nichter*, 10th Dist. No. 15AP-886, 2016-Ohio-7268 ("*Nichter III*").  In *Nichter III*, this court concluded there was no support in the record for the trial court's finding that appellee committed identity fraud while under "strong provocation."  We determined that while appellee's own financial difficulties at the time of the offenses may have provided appellee with a motive to commit identity fraud, such financial difficulties did not constitute "strong provocation" as that term is used in R.C. 2929.12(C)(2) and 2929.20(J).  We also found no support for the trial court's finding that the absence of actual or expected physical harm to appellee's victims mitigated the seriousness of appellee's offenses because the conduct normally constituting identity fraud does not create a risk of physical harm to the victim.  Having so concluded, this court stated it was "difficult to conceive" how the aggravating factors found by the trial court outweighed the relevant factors mitigating the seriousness of appellee's criminal

conduct. *Id.* at ¶ 45. Nevertheless, the majority decision in *Nichter III* concluded that because the trial court found other substantial grounds to mitigate appellee's offenses but did not identify those grounds in making its ruling, we remanded the case for a third time to allow the trial court "to expressly identify the other substantial grounds mitigating appellee's conduct on which it relied and to reweigh the statutory factors in light of this decision." *Id.* Our judgment entry stated, in relevant part, "[i]t is the judgment and order of this court that the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law *consistent with said decision.*"[1] (Emphasis added.) (Oct. 21, 2016 Jgmt. Entry at 1.)

{¶ 12} After this court issued *Nichter III*, but before conducting further proceedings on remand, the trial court released appellee from the previously imposed community control sanction by signing off on a "notification of community control termination" filed with the court by Franklin County Adult Probation Services ("FCAPS"). The FCAPS notification provides:

> On November 22, 2013, the above named defendant was found guilty of three counts of Taking the Identity of Another (F2) and placed on community control for a period of three (3) year(s). Effective 11/21/2016, the Defendant has complied with the terms of [his] community control.
>
> Accordingly, the Defendant is discharged from community control.

(Nov. 29, 2016 Notice of Community Control Termination at 1.)

{¶ 13} After issuing the order on November 29, 2016 releasing appellee from the community control sanction, the trial court issued a "criminal case processing sheet" ("CSPS") on January 23, 2017, vacating the previously scheduled hearing on appellee's May 24, 2013 motion for judicial release. The CSPS provides, in relevant part, as follows:

---

[1] In *Nichter III*, this court also noted that "appellant has expressed concern with comments made by the trial court indicating that it has no intention of reversing its ruling on appellee's motion for judicial release regardless of this court's review." *Id.* at ¶ 46. Believing the trial court would follow this court's instructions on remand, this court stated in the decision that "[t]he law of the case doctrine compels the trial court to follow the mandates of this court, regardless of any previous statement to the contrary." *Id.* at ¶ 46, citing *Nolan v. Nolan*, 11 Ohio St.3d 1, 5 (1984); *Hawley v. Ritley*, 35 Ohio St.3d 157, 160 (1988). We further found that "a court of appeals lacks jurisdiction to rule on a motion to recuse a trial court judge or to pass on the disqualification of a trial court judge." *Nichter III* at ¶ 46, citing R.C. 2701.03.

At the time of scheduling the 1/26/17 date, Defendant was under the jurisdictional supervision of this Court. Since the scheduling of the 1/26/17 court date the Defendant has been terminated from Community Control (effective 11 /29/16) and a hearing is no longer necessary.

{¶ 14} However, on motion of appellant, the trial court rescheduled the hearing. On February 26, 2018, the trial court held an oral hearing on appellee's May 24, 2013 motion for judicial release in accordance with this court's decision in *Nichter III*. At the hearing, appellee argued the trial court no longer had jurisdiction over the matter because appellee had served his community control sanction. The trial court made the following ruling:

I am sensitive to the arguments raised by [appellee's counsel] regarding her belief that this court is without jurisdiction.

However, paragraph 48 of the appellate court's decision from 2016 states that they are reversing and remanding the cause for further proceedings consistent with the decision. Despite all of the procedural processes that occurred in this case, *I believe that it would be a dereliction of my duty as the trial court judge to ignore the order of the appellate district not to reconsider the bases outlined in its decision.*

And so I am going to grant the state's motion for a hearing on the judicial release motion that was filed in May of 2013. So that is why we are here today.

(Emphasis added.)  (Feb. 26, 2018 Tr. at 10.)

{¶ 15} On March 8, 2018, the trial court issued a decision and entry granting appellee's May 24, 2013 motion for judicial release. After making the statement at the hearing that "it would be a dereliction of my duty as the trial court judge to ignore the order of the appellate district not to reconsider the bases outlined in its decision," the trial court disregarded the specific instructions of this court and, once again, found that strong provocation indicated appellee's conduct was not more serious than conduct normally constituting the offense of identity fraud. (Feb. 26, 2018 Tr. at 10.)  Even though this court in *Nichter III* determined the mitigating factor listed in R.C. 2929.12(C)(3) was of "dubious value in mitigating appellee's conduct" and "largely irrelevant to the analysis," the trial court, once again, found that because appellee did not cause or expect to cause physical harm to his victims, his conduct in committing identity fraud was not more serious than conduct normally constituting that offense. *Nichter III* at ¶ 42, 45.  In keeping with this

court's instruction, however, the trial court found, pursuant to R.C. 2929.12(C)(4), that appellee's relatively small financial gain as a result of his crimes and appellee's "own assessment that his dismal financial situation was the catalyst for his terrible choices" constituted "substantial grounds to mitigate [appellee's] conduct, although the grounds are not enough to constitute a defense."  (Mar. 8, 2018 Decision & Entry at 16, 17.)

{¶ 16} As a matter of right, appellant appealed to this court from the trial court's decision modifying the previously imposed sentence by a grant of judicial release.  R.C. 2953.08(B).

## II.  ASSIGNMENT OF ERROR

{¶ 17} Appellant assigns the following as trial court error:

> [1.] THE TRIAL COURT ERRED IN GRANTING JUDICIAL RELEASE BY GOING BEYOND AND VIOLATING THIS COURT'S APPELLATE MANDATE AND FAILING TO FOLLOW THIS COURT'S RULING.
>
> [2.] THE TRIAL COURT ERRED IN GRANTING JUDICIAL RELEASE IN THE ABSENCE OF RECORD SUPPORT FOR THE NECESSARY FINDING RELATED TO SERIOUSNESS.

## III.  STANDARD OF REVIEW

{¶ 18} The standard of review applied by an appellate court in reviewing a trial court's decision to grant judicial release is found in R.C. 2953.08(G)(2), which provides as follows:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.  The appellate court's standard for review is not whether the sentencing court abused its discretion.  *The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following*:
>
> (a)  *That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division*

> *(B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;*

**(b)  That the sentence is otherwise contrary to law.**

(Emphasis added.)

## IV.  LEGAL ANALYSIS

### A.  JURISDICTION

{¶ 19}  Though appellee argued in the trial court that his release from the community control sanction divested the trial court of jurisdiction in this matter, neither party raised the issue in this appeal.  Nevertheless, because the issue of jurisdiction is a threshold issue for purposes of appeal, this court issued an entry on November 15, 2018 ordering the parties to submit supplemental briefing on the following question:

> In light of the trial court's November 29, 201[6] entry terminating appellee's community control, is this matter moot, ripe and/or does this court lack jurisdiction to hear and determine the merits of the instant appeal?

(Nov. 15, 2018 Journal Entry at 1.)

{¶ 20}  The parties filed their respective briefs, and this court has considered the jurisdictional question.  Appellee maintains the trial court's order releasing appellee from community control divested the trial court of jurisdiction to revisit appellee's motion for judicial release even though this court had repeatedly reversed the trial court's judgments granting judicial release and remanded the case to the trial court for further proceedings. We disagree with appellee's arguments.

{¶ 21}  The procedural history of this case, as set forth above, shows the trial court has never issued an order granting judicial release and imposing a community control sanction that has not been reversed by this court.  In each of our prior decisions reversing the trial court's judgment granting judicial release and imposing a community control sanction, we remanded the case to the trial court with instructions to conduct further proceedings on appellee's May 24, 2013 motion for judicial release.  *Nichter I*; *Nichter II*; *Nichter III*.

{¶ 22}  " 'The effect of a reversal and an order of remand is to reinstate the case to the docket of the trial court in precisely the same condition that obtained before the error occurred.' "  *State v. Allen*, 10th Dist. No. 13AP-460, 2014-Ohio-1806, ¶ 29, quoting *Wilson*

*v. Kreusch*, 111 Ohio App.3d 47, 51 (2d Dist.1996). "When a case is remanded to a trial court, that court 'may not consider the remanded case for any other purpose, may not give any other or further relief, may not review for apparent error, and may not otherwise intermeddle with it except to settle so much as has been remanded.' " *State v. Maxwell*, 10th Dist. No. 02AP-1271, 2004-Ohio-5660, ¶ 13, quoting *State ex rel. Natl. Elec. Contrs. Assn. v. Ohio Bur. of Emp. Servs.*, 10th Dist. No. 97APD07-895 (Sept. 16, 1999), *aff'd*, 88 Ohio St.3d 577 (2000). In light of this court's prior decisions in this case, the trial court's November 29, 2016 entry did not have the effect of releasing appellee from the trial court's jurisdiction. By reason of our prior decisions in this case, the trial court retained continuing jurisdiction of appellee's May 24, 2013 motion for judicial release.

{¶ 23} Given the limited scope of our remand in *Nichter III*, the trial court's November 29, 2016 entry merely represents an acknowledgement by the trial court that FCAPS complied with its statutory duty to effectuate the court-ordered community control sanction and that appellee fully complied with the terms of community control. In light of our reversal of the trial court's decision granting judicial release, the trial court's November 29, 2016 entry was more akin to a ministerial function than an adjudication of the parties' substantial rights. Thus, the trial court's November 29, 2016 entry did not render moot appellant's appeal, as of right, from the trial court's judgment granting judicial release.

{¶ 24} For similar reasons, we disagree with appellee's assertion that the trial court's November 29, 2016 order releasing appellee from community control became final due to appellant's failure to file a notice of appeal to this court. There is no question that community control proceedings in felony cases are created by statute and set forth in R.C. 2929.15. "Like judicial release, community control proceedings are special proceedings." *State v. Ogle*, 4th Dist. No. 16CA22, 2017-Ohio-869, ¶ 8, citing *State v. Dowler*, 4th Dist. No. 15CA7, 2015-Ohio-5027, ¶ 14-17. There is also no question that an order revoking community control and imposing a sentence is a final, appealable order because the order is made in a special proceeding and affects a substantial right. *Ogle* at ¶ 8.

{¶ 25} "However, not all orders arising out of community control proceedings affect a substantial right." *Id.* at ¶ 9. *See also State v. Ogle*, 4th Dist. No. 14CA17, 2014-Ohio-4868 (order denying appellant's motion to terminate her community control was not a

final, appealable order because her motion was an attempt to correct or modify her sentence); *State v. Burton*, 2d Dist. No. 11CA0031, 2012-Ohio-2412 (judgment that convicted defendant of violation of the community control sanctions that had been previously imposed was not a final order for purposes of R.C. 2505.02, as the face of the judgment entry did not indicate that the conviction was for defendant's community control violations under R.C. 2929.15(B)(1)). Here, the trial court's November 29, 2016 entry was not the result of any adversarial proceeding at all. The trial court issued the entry without providing any prior notice to the parties and without conducting any sort of hearing. The order did not grant, revoke, or modify the community control sanction and did not purport to rule on any of the issues subject to our remand in *Nichter III*.

{¶ 26} "An order affects a substantial right for the purposes of R.C. 2505.02(B)(2) only if an immediate appeal is necessary to protect the right effectively." *Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, ¶ 7. Consistent with our reasoning as set forth above, the trial court's November 29, 2016 entry did not affect a substantial right of appellant and cannot be considered a final order in light of this court's decision in *Nichter III*. The trial court's November 29, 2016 entry in this case did not impede the state's right to appeal, pursuant to R.C. 2953.08(B)(3), from the trial court order granting judicial release following our remand in *Nichter III*. Accordingly, we hold the issues raised by appellant's appeal are not rendered moot by the trial court's November 29, 2016 entry.

{¶ 27} For the foregoing reasons, we find the trial court retained jurisdiction of appellee's May 24, 2013 motion for judicial release following our decision in *Nichter III*, and, accordingly, this court has jurisdiction to hear and determine appellant's appeal from the trial court's March 8, 2018 order granting judicial release.

### B. APPELLANT'S ASSIGNMENTS OF ERROR

#### 1. First Assignment of Error

{¶ 28} In appellant's first assignment of error, appellant contends the trial court erred and violated the law-of-the-case doctrine when it granted judicial release to appellee. We agree.

{¶ 29} In *Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, the Supreme Court of Ohio recently examined the law-of-the-case doctrine in Ohio and made the following observations:

> The law-of-the-case doctrine has long existed in Ohio jurisprudence. " '[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' " (Brackets sic.) *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15, quoting *Nolan*, 11 Ohio St.3d at 3, 462 N.E.2d 410. "The doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." Id.
>
> Although the law-of-the-case doctrine generally is "a rule of practice rather than a binding rule of substantive law," *Nolan* at 3, we have also explained that "the Ohio Constitution 'does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals.' " *State ex rel. Cordray v. Marshall*, 123 Ohio St.3d 229, 2009-Ohio-4986, 915 N.E.2d 633, ¶ 32, quoting *State ex rel. Potain v. Mathews*, 59 Ohio St.2d 29, 32, 391 N.E.2d 343 (1979). The doctrine therefore "functions to compel trial courts to follow the mandates of reviewing courts," *Nolan* at 3, and "[a]bsent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case," id. at the syllabus.
>
> Accordingly, a trial court is without authority to extend or vary the mandate issued by a superior court, *id.* at 4, and "where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law," *id.* at 3.

*Id.* at ¶ 14-16.

{¶ 30} It is clear from the trial court's decision that the trial court violated the mandate of this court when it found appellee committed identity fraud while under strong provocation. This very issue was previously resolved by this court in *Nichter III*, and neither the relevant facts nor the dispositive legal issues have changed since our remand. In finding that appellee's conduct in committing identity fraud was less serious than the conduct normally constituting the offense, the trial court made the very finding this court found in *Nichter III* to be clearly and convincingly unsupported by the record. In so doing,

the trial court essentially adopted the view advocated by the dissent in *Nichter III* and disagreed with the majority decision.

{¶ 31} " '[T]the Ohio Constitution "does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals." ' " *Giancola* at ¶ 15, quoting *State ex rel. Cordray v. Marshall*, 123 Ohio St.3d 229, 2009-Ohio-4986, ¶ 32, quoting *State ex rel. Potain v. Mathews*, 59 Ohio St.2d 29, 32 (1979). By undertaking its own analysis of an issue previously resolved by this court in *Nichter III* and then reaching the opposite conclusion reached by the majority in *Nichter III*, the trial court violated the law-of-the-case doctrine. This was error.

{¶ 32} Similarly, the trial court found the factor listed in R.C. 2929.12(C)(3) mitigated the seriousness of appellee's criminal conduct even though this court, in *Nichter III*, found this factor of "dubious value in mitigation of appellee's conduct" and "largely irrelevant to the analysis" because victims of identity fraud do not ordinarily suffer physical harm. *Nichter III*, 2016-Ohio-7268, at ¶ 42. The only reason given by the trial court for doing so was the trial court's disagreement with this court's conclusions in *Nichter III*. Mere disagreement with the reviewing court is not a justifiable reason to disregard a reviewing court's clear instructions on remand. *Giancola*; *Nolan*.

{¶ 33} Appellee argues that an exception to the law-of-the-case doctrine should be recognized in this case because application of the doctrine would yield an unjust result. In making this argument, appellee relies on a decision of the Eleventh District Court of Appeals in *State v. Patterson*, 11th Dist. No. 95-T-5207 (Mar. 29, 1996). In that case, the Eleventh District reversed the appellant's robbery conviction on finding trial counsel provided ineffective assistance by failing to move for dismissal of the charge on speedy trial grounds. On remand, the trial court reviewed a previously unfiled transcript which established that appellant did not have a meritorious argument for dismissal on speedy trial grounds. The trial court subsequently convicted appellant of robbery and appellant appealed arguing that the trial court erred and violated the law-of-the-case doctrine. Though the Eleventh District admonished the parties for not earlier filing the transcript, the court held that application of the law-of-the-case doctrine under the circumstances would be unjust, and the court affirmed the conviction.

{¶ 34} *Patterson* does not support appellee's argument in this case. Unlike *Patterson*, the trial court did not consider any new evidence on remand from our majority in *Nichter III*.[2] There are also no extraordinary circumstances, such as an intervening decision by the Supreme Court that would have provided the trial court with discretion to disregard the mandate of this court in the prior appeal in *Nichter III*. The only conclusion we can draw from our reading of the trial court's decision is that the trial court intentionally thwarted the remand order of this court in *Nichter III*.

{¶ 35} The Supreme Court has stated " 'the [law-of-the-case] doctrine is necessary to ensure consistency of results in a case, *to avoid endless litigation by settling the issues*, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution.' " (Emphasis added.) *Giancola* at ¶ 14, quoting *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, ¶ 15. The procedural history of this case proves the need for such a rule. In the intervening period since the trial court first granted appellee's motion for judicial release in 2013, the trial court has deemed that appellee completed the three-year period of community control initially imposed by it, despite the order never being affirmed on appeal. If the trial court's failure to follow the remand order in this case results in the fourth reversal of the trial court's decision, appellee could be faced with the possibility of serving the remaining 25 months of his prison term. However, the question whether appellee should receive any present or future consideration for time ostensibly served on community control is not an issue raised in this appeal.

{¶ 36} For the foregoing reasons, we hold the trial court erred and violated the law-of-the-case doctrine when it found appellee's criminal conduct in this case was less serious than conduct normally associated with identity fraud because in committing the offense, appellee was under "strong provocation," and because in committing the offense, appellee "did not cause or expect to cause physical harm to any person or property." R.C. 2929.12(C)(2) and (3). Accordingly, appellant's first assignment of error is sustained.

### 2. Appellant's Second Assignment of Error

{¶ 37} In appellant's second assignment of error, appellant argues the record clearly and convincingly fails to support the trial court's finding, pursuant to R.C. 2929.20(J)(1)(b),

---

[2] Though appellee's counsel at the oral hearing stated appellee has paid all restitution requested of him, the payment of such restitution had no impact on the trial court's finding of "strong provocation."

that the relevant factors indicating appellee's criminal conduct was more serious than the conduct normally constituting identity fraud outweigh the relevant factors indicating appellee's criminal conduct was less serious than the conduct normally constituting identity fraud.  We agree.

{¶ 38} R.C. 2929.20(J) provides, in relevant part, as follows:

(1) *A court shall not grant a judicial release* under this section to an eligible offender who is imprisoned for a felony of the first or second degree, or to an eligible offender who committed an offense under Chapter 2925. or 3719. of the Revised Code and for whom there was a presumption under section 2929.13 of the Revised Code in favor of a prison term, *unless the court, with reference to factors under section 2929.12 of the Revised Code, finds both of the following*:

(a) That a sanction other than a prison term would adequately punish the offender and protect the public from future criminal violations by the eligible offender because the applicable factors indicating a lesser likelihood of recidivism outweigh the applicable factors indicating a greater likelihood of recidivism;

(b) *That a sanction other than a prison term would not demean the seriousness of the offense because factors indicating that the eligible offender's conduct in committing the offense was less serious than conduct normally constituting the offense outweigh factors indicating that the eligible offender's conduct was more serious than conduct normally constituting the offense.*

(2) A court that grants a judicial release to an eligible offender under division (J)(1) of this section shall specify on the record both findings required in that division and also shall list all the factors described in that division that were presented at the hearing.

(Emphasis added.)

{¶ 39} As we concluded in *Nichter III*, the record in this case clearly and convincingly fails to support the trial court finding that the factors listed in R.C. 2929.12(C)(2) and (3) mitigate appellee's criminal conduct in this case.  Accordingly, the trial court was prohibited from considering such factors in determining whether the mitigating factors outweigh the factors identified by the trial court as making appellee's criminal conduct more serious than the conduct normally constituting identity fraud.

Nevertheless, the trial court also made a finding, pursuant to R.C. 2929.12(C)(4), that other substantial grounds mitigated appellee's conduct in this case. The trial court found appellee's relatively small financial gain as a result of his crimes and his "dismal financial situation," which "was the catalyst for [appellee's] terrible choices," provided substantial grounds to mitigate appellee's conduct, although such grounds were not enough to constitute a defense. (Mar. 8, 2018 Decision & Entry at 17.)

{¶ 40} The record in this case establishes that appellee's criminal conduct jeopardized the professional licenses, reputations, businesses, and livelihoods of his victims. At the November 14, 2014 hearing on appellee's motions, one of the victims, Reese, told the trial court that appellee's crimes continues to result in his appraisal license being threatened and the loss of business opportunities. Reese's comments to the court were as follows:

> I have had no closure in this whole thing. Every day I have to worry about when the mail is delivered, if I am going to get a certified letter from the Department of HUD, a letter from the Division of Real Estate wanting to pull my real estate license. It is very stressful.
>
> Now I also have to worry about these fraudulent appraisals coming back and the loans being called, and they are going to come after me, because my name is on all of these reports for deficiency judgment. I will be having to defend myself again for this whole thing.
>
> So again, it is just very stressful. It has hurt my ability to get new business because everybody wants to know have you ever had trouble with HUD? Have you ever had trouble with the Division of Real Estate? And I have to say yes, even though it is not my fault, you know, they see that yes, I have checked yes, and it kind of -- it has been very stressful, and I have had no closure.

(Nov. 14, 2014 Tr. at 8.)

{¶ 41} Reese informed the trial court that appellee's criminal conduct not only harmed him financially, it produced a number of seriously under-secured mortgages that, if defaulted, could potentially cause future economic harm both to the lending institutions and the borrowers in the form of deficiency judgments.[3] In our view, appellee's willingness,

---

[3] At the January 13, 2012 hearing, Reese expressed similar concerns about his own license and business, and, in addition, he told the court the following: "But what's even more important, Your Honor, is that these

for a relatively small financial gain, to engage in criminal conduct that gave rise to such potentially devastating consequences to his victims is a factor exacerbating the seriousness of appellee's crimes rather than providing grounds for mitigation, let alone substantial grounds.[4]

{¶ 42} With regard to appellee's "dismal financial situation," the majority in *Nichter III* made the following comments:

> In the absence of any evidence suggesting another cause of appellee's financial problems, the only reasonable conclusion to draw from this record is that appellee caused his own dire financial straits by engaging in chronic overspending. *See State v. Bodkins*, 2d Dist No. 10-CA-38, 2011-Ohio-1274 (at sentencing, a defendant is entitled to introduce evidence contradicting negative information in the presentencing investigation).

*Id.* at ¶ 36.

{¶ 43} On remand, the trial court found that "the Court must and will give credence to [appellee's] own assessment that [he committed his crimes because of] his dismal financial situation." (Mar. 8, 2018 Decision & Entry at 17.) Echoing the dissent in *Nichter III*, the trial court speculated that because appellee did not explain the nature and extent of his financial difficulties either to the presentence investigator or in his statements at the hearing, it is possible that a less sinister cause of appellee's dismal financial situation existed, such as the payment of family medical bills. We agree that, on this record, it is possible appellee's dismal financial situation was caused, in whole or in part, by factors other than appellee's selfishness and greed. However, because appellee did not disclose the precise nature and extent of his dismal financial situation, there is no evidentiary basis to conclude that appellee's dismal financial situation was due to issues beyond appellee's

---

appraisals for these homeowners were completely inflated. They weren't even close to being what the houses were worth." (Jan. 13, 2012 Tr. at 17.)

[4] The trial court made the following statement at the November 22, 2013 hearing: "Let me say, first, Mr. Reese, to you, sir, I cannot see you, I appreciate your coming here today. I am sensitive to what it is that you have expressed, and, candidly, your letter is the reason that I decided to wait an additional year before I would even consider [appellee's] request for judicial release. There are two things that people have in life, and that is your name and your reputation, and, [appellee], by your actions you have challenged and on some level ruined both for Mr. Reese, and there is almost nothing that this court would really be able to do to get those things back for him, and I need for you to understand the financial, the emotional, the intellectual, the physical impact that you have had on Mr. Reese's life, not only his life, but his clients that he is trusted and accumulated over time, his family's life, his well-being, you have forever changed that because you decided to do something that is the supreme in selfishness." (Nov. 22, 2013 Tr. at 10-11.)

control.  Thus, the record contains no support for the trial court's finding that appellee's dismal financial situation was "substantial grounds" mitigating appellee's criminal conduct. (Mar. 8, 2018 Decision & Entry at 17.)  To reach such a conclusion on this record is pure speculation.

{¶ 44} In our view, in drafting R.C. 2929.12(C)(4) and 2929.20(J), the General Assembly used the term "substantial grounds" for a reason.  *See, e.g., State v. Legg*, 4th Dist. No. 14CA23, 2016-Ohio-801 (offender's youth and his status as an accomplice rather than a principal offender may be considered by sentencing court as substantial factors mitigating the offender's conduct); *State v. Thrasher*, 9th Dist. No. 27547, 2015-Ohio-2504, ¶ 9 (in sentencing appellant for the aggravated murder of his grandfather, evidence of the trauma associated with his childhood indicated "substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense" where offender was physically and sexually abused for years by adults in his life, rejected by his mother who chose to parent only his brother, his father was deceased, he was permitted to drop out of school, and he sought escape in drugs and alcohol and support and mentorship from the streets and a man with gang affiliations).  *But see State v. Cunningham*, 2d Dist. No. 2016-CA-31, 2017-Ohio-8333, ¶ 5, 11 (evidence that burglary offender struggled with "chemical dependency from a young age" and "was under the influence of drugs during the commission of the crimes" for which he was convicted are not "substantial grounds to mitigate [his] conduct," where the evidence also shows that appellant "targeted [specific] people," stolen "exactly what [he] wanted to steal," or planned in advance how he would dispose of the stolen property).  Based on the foregoing, we find the record clearly and convincingly fails to support the trial court's findings that appellee's relatively small financial gain as a result of his crimes and his "dismal financial situation," which "was the catalyst for [appellee's] terrible choices," provided substantial grounds to mitigate appellee's conduct under R.C. 2929.12(C)(4) and 2929.20(J).  (Mar. 8, 2018 Decision & Entry at 17.)

{¶ 45} In the trial court's most recent decision granting judicial release, the trial court found, as it had in all its prior decisions granting judicial release, that consideration of the following R.C. 2929.12(B) factors rendered appellee's conduct in committing identity fraud *more serious* than conduct normally constituting the offenses: "serious physical,

psychological, or economic harm as a result of the offense" under R.C. 2929.12(B)(2); "offender held a public office or position of trust in the community, and the offense related to that office or position" under R.C. 2929.12(B)(3); "[t]he offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice" under R.C. 2929.12(B)(4); "professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others" under R.C. 2929.12(B)(5); and "[t]he offender's relationship with the victim facilitated the offense" under R.C. 2929.12(B)(6). These trial court findings have never been challenged in any of the prior appeals and have not been challenged herein.

{¶ 46} The trial court listed three statutory mitigating factors to support a finding that appellee's conduct was less serious than the conduct normally constituting identity fraud: strong provocation under R.C. 2929.12(C)(2); the absence of physical harm to the victims under R.C. 2929.12(C)(3); and other substantial grounds to mitigate the offender's conduct under R.C. 2929.12(C)(4), including appellee's relatively small financial gain and his dismal financial situation that was a catalyst for his crimes. The trial court then weighed the factors which made appellee's criminal conduct more serious than the conduct normally constituting identity fraud against the factors which made appellee's conduct less serious and found that appellee's conduct in committing identity fraud was less serious than the conduct normally constituting identity fraud. Pursuant to R.C. 2929.20(J)(2)(b), the trial court further found that because the R.C. 2929.12(C) factors outweighed the R.C. 2929.12(B) factors, a sanction other than prison would not demean the seriousness of the offense.

{¶ 47} As noted above, the majority in *Nichter III* held the record clearly and convincingly failed to support the trial court's finding that the factors listed in R.C. 2929.12(C)(2) and (3) applied in this case. Because no additional evidence was submitted to the trial court on remand, this court's determination in *Nichter III* is the settled law of this case. Thus, the trial court erred and violated the law-of-the-case doctrine when it weighed the factors of strong provocation and the absence of physical harm to the victims against the unchallenged R.C. 2929.12(B) factors it found to be present in the case.

{¶ 48} In this appeal, we have determined appellee's relatively small financial gain from his crimes and the "dismal financial situation" that was a "catalyst for [appellee's]

terrible choices" are not "substantial grounds" mitigating the seriousness of appellee's criminal conduct under R.C. 2929.12(C)(4). (Mar. 8, 2018 Decision & Entry at 17.) Thus, the trial court also erred when it weighed appellee's relatively small financial gain from his crimes and the "dismal financial situation" that was a "catalyst for [appellee's] terrible choices" against the unchallenged R.C. 2929.12(B) factors found to be present in the case. (Mar. 8, 2018 Decision & Entry at 17.) Because the trial court did not identify any other R.C. 2929.12(C) factors, there are no remaining mitigating factors left to weigh against the unchallenged R.C. 2929.12(B)(4) aggravating factors.

{¶ 49} Based on the above, we hold the trial court erred when it granted appellee's application for judicial release and we sustain appellant's second assignment of error. We find that on this record, appellee failed to carry his burden as to the finding required by R.C. 2929.20(J)(1)(b), as a matter of law, and there is no further need for this court to remand the case to the trial court to make additional findings or engage in the weighing process contemplated by R.C. 2929.20(J).

{¶ 50} R.C. 2929.20(J)(2) clearly places the burden on eligible offenders to prove both of the facts listed in division (J)(1) in order to obtain judicial release. *State v. Ware*, 11th Dist. No. 2013-P-0011, 2013-Ohio-5833, *discretionary appeal not allowed*, 138 Ohio St.3d 1496, 2014-Ohio-2021; *State v. Hunt*, 10th Dist. No. 04AP-1177, 2005-Ohio-3144, ¶ 13. In order to satisfy his burden of proof under R.C. 2929.12(J)(1)(b), appellee was required to prove that a sanction other than a prison term would not demean the seriousness of the offense because factors indicating that his conduct in committing identity fraud was less serious than conduct normally constituting that offense outweigh factors indicating that his conduct was more serious than conduct normally constituting that offense. Because the trial court thwarted this court's order of remand in *Nichter III* and failed to identify other substantial grounds mitigating appellee's conduct that are supported by the record, we are left with no alternative but to find that a sanction other than a prison term would demean the seriousness of the offense.

{¶ 51} Accordingly, pursuant to R.C. 2953.08(G)(2), we hereby vacate the trial court's judgment granting judicial release and remand this matter for the trial court to issue an order denying judicial release. We express no opinion, given the unique procedural history of this case, whether appellee must be remanded to the custody of the Ohio

Department of Rehabilitation and Correction to serve the remainder of the four-year sentence initially imposed by the trial court, as this issue is not properly before us at this time.

## V.  CONCLUSION

{¶ 52} Having sustained appellant's two assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas, vacate the order granting judicial release, and remand the matter for the trial court to issue an order denying judicial release.

*Judgment reversed*; *order vacated*;
*and cause remanded with instructions*.

LUPER SCHUSTER, J., concurs.
TYACK, J., dissents.

TYACK, J., dissenting.

{¶ 53} I do not see how we can find that the termination of community control or the failure to terminate community control does not involve a substantial right.  I believe that the State of Ohio should have appealed the trial court's order terminating community control.  The failure of the State of Ohio to do so ended this case.

{¶ 54} Daniel Nichter had done everything required of him.  He no longer had to report to a probation officer.  He was relieved of all responsibilities attendant to being on community control.  The State of Ohio lost all its control of Nichter.  The state needed to appeal that loss of control and did not do so.

{¶ 55} I would affirm the ruling of the trial court.  Because the majority of this court does not do so, I dissent.

_____