[Cite as *State v. Mathis*, 2022-Ohio-2291.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                         Court of Appeals No.  L-21-1184

      Appellee                                      Trial Court No.  CR0201701128

v.

Robert Mathis                                        **DECISION AND JUDGMENT**

      Appellant                                     Decided:  June 30, 2022

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**ZMUDA, J.**

{¶ 1} This matter is before the court on appeal of the October 7, 2021, judgment of

the Lucas County Court of Common Pleas, sentencing appellant, Robert Mathis, to a

prison term of 9 years after his no contest plea to involuntary manslaughter in violation of

R.C. 2903.04(A) and (C), a felony of the first degree.  Finding no error, we affirm.

## I.  Procedural History and Background

{¶ 2} This is Mathis' second appeal in this case.  In reviewing the trial court's judgment, we must first address the procedural history and background of the case.

{¶ 3} On or about June 8, 2011, Mathis' girlfriend, J. M., died in his home. Mathis claimed he brought J.M. home the evening before, but had not seen her since 10:00 a.m. and assumed she left.  He claimed he left the house and returned around 3:00 p.m., and when he tried using the water, he noticed problems with the water pressure. Mathis claimed he went to the basement to check the water heater and discovered J.M. lying prone in standing water, near the water heater.

{¶ 4} According to Mathis, he carried J.M. upstairs, placed her on an air mattress, and called his mother, who urged him to call 911.  His mother came to the home, and neither Mathis nor his mother immediately called for help.  Eventually, after an appreciable delay, Mathis called 911.  He reported that J.M. was not conscious and appeared dead, indicating she was cold and stiff.  Emergency responders arrived within minutes of the call and pronounced her dead at 8:57 p.m. without attempting any medical intervention, based on their determination that there "was irreversible absence of vital signs.  She was passed."

{¶ 5} Police interviewed Mathis at the scene and he consented to a search of his home.  Police seized a ball peen hammer, a wire hanger, and J.M.'s cell phone from the home.  The detective assigned to the case subpoenaed Mathis' phone records, but did not

2.

remember receiving any records. Due to his belief that he lacked sufficient evidence, the detective did not arrest Mathis.

{¶ 6} An autopsy was performed as part of the investigation. J.M. had bruising and cuts all over her body, scalding on her face, and cigarette burns on her neck and body. Some of the bruising had distinctive markings, consistent with a round hammer head or a bent, wire hanger. J.M. also had significant internal injuries. DNA was recovered from the hammer head, but the sample was insufficient for testing.

{¶ 7} After the assigned detective retired in 2016, Detective Jay Gast of the cold case unit took over the handling of the case. Detective Gast re-interviewed Mathis and reviewed the file, including interviews and documents, and identified new leads and witnesses. One of these new witnesses was Sheri Marshall, who was one of the last people to see J.M. alive. Shortly before J.M. died, Mathis called Marshall to come over and clean up broken glass and dishes in the kitchen and dining room of his home. Marshall saw J.M. lying on a couch in the living room, and when Marshall tried to give her a drink of water, J.M. was unable to talk or sit up. Despite Marshall's concerns, Mathis did not think J.M. needed medical attention. Marshall learned of J.M.'s death the next day, after she approached the house and ran into news reporters.

{¶ 8} The matter was presented to the grand jury, and Mathis was indicted on January 20, 2017. The state charged Mathis in a two-count indictment, charging

3.

aggravated murder in violation of R.C. 2903.01(A) and (F),[1] and murder in violation of R.C. 2903.02(B).

{¶ 9} Despite the time between the offense and indictment, Mathis never filed a motion to dismiss based on this delay prior to his 2018 trial, as provided under Crim.R. 12(C). The matter proceeded to trial, and a jury found Mathis guilty of both charges in the indictment. The state elected to proceed to sentencing on the aggravated murder count, and the trial court sentenced Mathis to life in prison without the possibility of parole.

{¶ 10} In his first appeal, Mathis challenged the conviction and life sentence arguing the trial court erred in permitting "other acts" evidence for purposes of demonstrating a modus operandi of the crime. *See State v. Mathis,* 6th Dist. Lucas No. L-18-1192, 2020-Ohio-3068 (*Mathis I*). During the trial, the trial court permitted evidence of other incidents of domestic violence by Mathis against J.M. and another woman. We reversed his conviction, finding the testimony that indicated Mathis committed domestic violence against his partners did not "contain the same distinctive characteristics that would rise to the level of a behavioral fingerprint." *Mathis I* at ¶ 68. We reversed and remanded for a new trial. *Id.* at ¶ 86.

{¶ 11} On July 9, 2021, prior to a second trial on remand, Mathis filed a motion to dismiss the indictment arguing preindictment delay. Although Mathis did not request leave to file the motion, the trial court considered the motion. Within his motion, Mathis

---

[1] Effective March 20, 2019, R.C. 2903.02(F) has been re-codified as R.C. 2903.02(G).

4.

referenced the delay between the 2011 death of J.M. and his indictment in 2017, and as support for dismissal, Mathis primarily argued the loss of evidence to rebut testimony admitted during his first trial. Mathis argued that his own phone records, lost or misplaced prior to Detective Gast's involvement, would have refuted testimony regarding his activities around the time of J.M.'s death. He also argued that, but for his mother's advanced age, she could have provided exculpatory testimony regarding J.M.'s condition in the hours preceding his call to 911, refuting the coroner's testimony regarding time of death.

{¶ 12} The trial court considered the merits of Mathis' argument and denied the motion to dismiss in a ruling from the bench, journalized on August 20, 2021. After plea negotiations, Mathis withdrew his prior plea and entered a no contest plea to the lesser included offense of involuntary manslaughter in Count 2. The state agreed to dismiss Count 1 and recommended a nine-year cap to the sentence. The trial court accepted the plea, found Mathis guilty, and proceeded directly to sentencing. The trial court imposed a nine-year prison term and entered a nolle prosequi as to Count 1. Mathis filed a timely appeal.

## II. Issues on Appeal

{¶ 13} Mathis now asserts the following as error for our review:

1. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT, WHEN IT DENIED APPELLANT'S MOTION TO DISMISS ON GROUNDS OF PREINDICTMENT DELAY.

5.

2. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §10 OF THE OHIO CONSITTION.

### A. Motion to Dismiss

{¶ 14} In his first assignment of error, Mathis argues the trial court erred in denying his motion to dismiss based on preindictment delay. "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution." *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus.

{¶ 15} Mathis' motion to dismiss was problematic, given its timing and lack of evidentiary support. First, based on the record, the trial court could have summarily denied the motion. Pursuant to Crim.R. 12(C)(2) and (D), the time for Mathis to challenge the indictment was "within thirty-five days after arraignment or seven days before trial, whichever is earlier." Additionally, Crim.R. 12(F) required the trial court to rule on a motion to dismiss "before trial." While the Rule permits a trial court to consider untimely motions, for good cause, Mathis did not seek leave to challenge the indictment prior to his trial, and the failure to raise an objection or seek dismissal prior to trial is deemed as waiver under Crim.R. 12(H).

6.

{¶ 16} While Mathis did not assert preindictment delay prior to his 2018 jury trial, upon reversal of his conviction and remand for a new trial, the case returned to the trial court in a pre-trial posture. *See, e.g., State v. Nichter,* 2019-Ohio-279, 129 N.E.3d 984 (10th Dist.), ¶ 22 (effect of reversal is to reinstate the case in "precisely the same condition" it was in prior to the error) (citations omitted.). Therefore, while Mathis' challenge to the indictment was well beyond the time permitted by Crim.R. 12(D), he arguably raised the issue prior to trial. However, the record contains no indication that Mathis sought leave to challenge the indictment, and while the trial court could permit the motion "for good cause shown," the record demonstrates no explanation for the untimely motion or the basis for a good cause determination. Therefore, regardless of the merits of Mathis' challenge, the trial court could have summarily denied the motion as untimely. *See State v. Ross,* 9th Dist. Lorain No. 09CA009742, 2012-Ohio-536, ¶ 15 (if motion not properly before the trial court, it need not reach the merits). After the trial court addressed the merits, Mathis appealed its judgment.

{¶ 17} Additionally, we find a separate basis to reject Mathis' argument relative to preindictment delay. Mathis failed to raise the issue in his first appeal. He did not attempt to argue preindictment delay as error, meriting plain error review. *State v. Figueroa*, 11th Dist. Trumbull No. 2018-T-0071, 2019-Ohio-3151, ¶ 19, citing Crim.R. 52; *see also State v. Greathouse*, 2017-Ohio-6870, 94 N.E.3d 1083 (9th Dist.), ¶ 9 (failure to raise the issue before the trial court waives all but plain error review). He also did not raise the issue as part of a claim of ineffective assistance of counsel. Generally, a

7.

failure to raise an issue that is apparent on the record bars later consideration of that same issue under the doctrine of res judicata. *See State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 18 (Res judicata bars a defendant from raising, in a subsequent appeal, "any defense or any claimed lack of due process that was raised or could have been raised"). Therefore, the trial court could have summarily denied the motion as barred by res judicata, but instead addressed the motion on its merits.

{¶ 18} Accordingly, we review the denial of Mathis' motion to dismiss, despite Mathis' failure to pursue preindictment delay as error in his first appeal. In reviewing the trial court's determination, we give deference to the trial court's factual findings while applying de novo review to the court's application of the law to the facts. *State v. Adkins,* 2018-Ohio-2588, 115 N.E.3d 887 (6th Dist.), ¶ 11, quoting *State v. Reynolds,* 6th Dist. Lucas No. L-16-1080, 2018-Ohio-40, ¶ 37 (additional citation omitted.).

{¶ 19} Due to the timing of Mathis' motion to dismiss, there is a robust record for our review. Based on this record, J.M. died from serious injuries while in Mathis' home, he and the victim were alone in the home prior to J.M.'s death, and Mathis waited hours before calling for help. When help arrived, J.M.'s body was cold and stiff. To the extent Mathis argues that the phone records or his mother's testimony would have established an alibi or disputed the time of death, the trial court rejected this argument.

{¶ 20} As to the phone records, the trial court noted that a "mirror image" of the evidence Mathis hoped to produce was mostly in police custody, on J.M.'s phone. As to evidence that might impeach Marshall's claim that Mathis called her to come over right

8.

before J.M.'s death, Marshall testified and was subject to cross examination, and the trial court determined a phone record would only indicate whether a particular phone was used, not whether a call was made. Mathis' own records, furthermore, could have been subpoenaed prior to his trial, but based on his own inaction, were not. As to his mother's potential testimony, police interviewed her immediately following J.M.'s death, and the prosecutor produced notes of the interview to Mathis during discovery. The trial court further noted the lack of any evidence that Mathis' mother was not competent to testify, and questioned what benefit his mother's testimony would have provided as the second person to see J.M.'s lifeless body, after Mathis called her to the house. Based on these facts, the trial court found that Mathis failed to demonstrate actual prejudice.

{¶ 21} We find no error in the trial court's determination. To merit dismissal based on preindictment delay, Mathis must demonstrate actual prejudice. *Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097, paragraph two of the syllabus. The statute of limitations permitted indictment in this case, and as a result, the actual prejudice standard sets a high bar, requiring Mathis to demonstrate evidence of substantial prejudice, rather than what he *might* have shown had the state indicted him sooner. *See State v. Owens,* 8th Dist. Cuyahoga No. 102276, 2015-Ohio-3881, ¶ 5. "The law requires a defendant to do more than offer mere speculation as to how he was prejudiced by any delay because requiring less would undermine the statute of limitations." *Id.*

{¶ 22} "The determination of 'actual prejudice' involves 'a delicate judgment based on the circumstances of each case.'" *State v. Walls,* 96 Ohio St.3d 437, 2002-

9.

Oiho-5059, 775 N.E.2d 829, ¶ 52, quoting *United States v. Marion,* 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). A court weighing the circumstances must "consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." *Walls* at ¶ 52, citing *Luck* at 154, citing *Marion* at 326.

{¶ 23} Here, Mathis argues "lost" evidence that largely duplicates evidence already part of the record, or testimony of dubious value, such as his mother's opinion regarding the time of death. He also argues the loss of potential impeachment evidence to refute whether he made a particular phone call from his cell phone, but based on the record, this was evidence of little import considering Marshall's testimony placing her at Mathis' home the night before the media showed up at his house, regardless of any phone call, with the timing of the visit fixed in Marshall's memory as the day before she met news media at Mathis' door step.

{¶ 24} Considering Mathis' argument of actual prejudice against this record, Mathis failed to demonstrate actual prejudice and the trial court correctly denied the motion to dismiss. We therefore find Mathis' first assignment of error not well-taken.

### B. Ineffective Assistance

{¶ 25} In his second assignment of error, Mathis argues his trial counsel was ineffective for failing to present medical records, demonstrating Mathis' mother was not competent to testify.

10.

{¶ 26} "The right to counsel includes the right to effective assistance of counsel[,]" as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution. *State v. Mick,* 2018-Ohio-999, 108 N.E.3d 1149 (6th Dist.), ¶ 17, citing *Missouri v. Frye,* 566 U.S. 134, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).

{¶ 27} To prevail on his claim of ineffective assistance of counsel, Mathis must first establish his trial counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To do so, he "must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *State v. Lawson,* 64 Ohio St.3d 336, 341, 595 N.E.2d 902 (1992), quoting *Strickland* at 689. If Mathis succeeds in demonstrating deficiencies in his representation, he must next demonstrate prejudice, or show that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

{¶ 28} In this case, Mathis argues his counsel was deficient for failing to proffer his mother's medical records to the trial court in support of his argument that she was no longer competent to testify due to the passage of time between J.M.'s death in 2011 and his indictment in 2017. While the standard for dismissal based on preindictment delay required evidence of actual prejudice, and therefore trial counsel was arguably deficient in proceeding without evidence, Mathis fails to demonstrate a resulting prejudice based on this lapse. In arguing this conduct as ineffective assistance, Mathis casts this omission

11.

as the reason the trial court denied his motion to dismiss, ignoring the rest of the trial court's findings.

{¶ 29} In reviewing the record, it is clear that a lack of medical records was but one consideration factoring into the trial court's decision. In fact, the trial court seemed more concerned with the potential value of the mother's testimony, had the prosecution begun in 2012 rather than 2017. When asked whether the mother's testimony would matter, counsel had no argument beyond unsupported speculation. A review of the record, moreover, fails to demonstrate the mother's testimony would have been of consequence, considering police interviewed her at the scene, provided a summary of her statement in discovery, and she was not called to testify in the 2018 trial. Additionally, Mathis never claimed his mother was present before he discovered J.M.'s lifeless body, and based on the assessment of the first responders regarding body temperature and rigor mortis, Mathis' mother likely arrived at his home after J.M. had passed.

{¶ 30} Therefore, after careful review of the record, we find that failing to proffer medical records did not rise to the level of deficient representation that changed the outcome of the proceedings. Mathis' second assignment of error, accordingly, is not well taken.

12.

## III.  Conclusion

{¶ 31} Based on the foregoing, we affirm the judgment of the Lucas County Court of Common Pleas.  Mathis is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                                             _____

                                                         JUDGE

Christine E. Mayle, J.

                                            _____

Gene A. Zmuda, J.                                               JUDGE
CONCUR.

                                            _____

                                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.